NOT FOR PUBLICATION                                                                       CLOSED

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

―――――――――――――――――――――――――――――――
                                                          :
MICHELLE MASON,                                           :
                                                          :
                              Plaintiff,                  :
                                                          :        Civil Action No. 09-5553
                                                          :
              v.                                          :
                                                          :        **OPINION & ORDER**
MICHAEL J. ASTRUE,                                        :
COMMISSIONER OF SOCIAL SECURITY,                          :
                                                          :        Dated:  August 2, 2010
                              Defendant.                  :
―――――――――――――――――――――――――――――――:

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Michelle Mason's motion to review a

final determination of the Commissioner of the Social Security Administration (the

"Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g).  The

motion has been decided upon the written submissions of the parties pursuant to Federal Rule of

Civil Procedure 78.

## I.  BACKGROUND

### A.      **Plaintiff's Medical And Vocational History**

Plaintiff is a 45-year-old woman with a limited educational background and prior work

experience as a line packer and envelope stuffer.  She alleges disability as of May 20, 2003,

based upon HIV, hypertension, and a disorder of the back.  She has not worked since the onset of

her alleged disability.  (Tr. 14.)

Plaintiff's medical records indicate that she has been treated for various complaints over the relevant period. For example, in February 2005, she was treated for a cough, sore throat, and eye infection. The following month, she was treated for abdominal pain attributed to fibroids. In December 2005, she had a urinary tract infection. She also had pneumonia and a Candida infection of the mouth in 2005. (Tr. 19.)

In January 2006, Plaintiff was hospitalized for a ruptured appendix, for which she underwent surgery on January 3. Following the surgery, she related back problems that caused pain throughout her spine, particularly in the neck, upper thoracic area, and lower lumbar spine. She also related constant muscle pain throughout her body. (Tr. 19.)

Progress notes from Liberty Health for the period of 2005-2006 consist primarily of treatment for gynecological complaints stemming from a pelvic abscess secondary to Plaintiff's ruptured appendix. (Tr. 19.) Records from Jersey City Family Health Center show that Plaintiff was treated in 2006 for a fractured ankle and for complaints of pain in her left shoulder blade and left hip. In 2007, she was treated for non-debilitating complaints of weakness and body aches for two days. She was also treated for knee pain. Throughout this period, Plaintiff's condition was described as HIV, not AIDS, and she characterized her pain as a "0" out of "10," indicating no pain. On January 9, March 27, April 17, and May 10, 2007, Plaintiff denied any complaints. (Tr. 20.)

The record contains the following assessments of Plaintiff's condition:

A March 2004 medical examination report prepared by nurse practitioner Eva Stettner for the New Jersey Division of Family Development, which helps provide supplemental security income for the disabled, indicates that at that time, Plaintiff was ambulatory, not incapacitated,

2

and able to participate in a work training program.  (Tr. 397-98.)   In addition, nurse practitioner

Cynthia Salisbury, who saw Plaintiff monthly at Jersey City Medical Center's Outpatient Clinic,

stated in an October 2004 medical report for the Division of Disability Determination Services

that Plaintiff had no limitations in her ability to stand, walk, lift, carry, push, pull, or sit, and no

condition that limited her ability to perform work-related activities.  (Tr. 393.)  At the time,

Plaintiff's CD4 count was 980.[1]  (Tr. 392.)  Her CD4 counts have also been documented as 558,

447, 643, and 718.  (Tr. 20.)

On June 15, 2006, Dr. Fernando performed a consultative examination on Plaintiff,

during which Plaintiff told him that she had been diagnosed with HIV after taking a voluntary

blood test in 1997.  She reported that she had started HIV treatment, but then discontinued it after

being told that she did not need it.  (Tr. 269.)  She complained of pain throughout her spine and

constant, unbearable muscle pain throughout her body.  Dr. Fernando noted that Plaintiff was

taking medication for her hypertension.  (Tr. 269-70.)

Dr. Fernando's examination revealed that Plaintiff was not in any acute distress.  (Tr.

270.)  She had tenderness in her abdomen near her recent laparotomy scar, limitation of flexion

in the lumbar spine, positive straight leg raising, and limited range of motion in both shoulders.

(Tr. 271.)  X-rays showed that her cervical spine was normal and her lumbar spine had only facet

arthropathy.  (Tr. 274.)  She was able to perform transfers and walk on her heels and toes without

difficulty, used no assistive devices, and could squat approximately 25% of a full squat.  (Tr.

270.)  She had full strength in her upper and lower extremities, intact hand and finger dexterity,

---

[1] In general, susceptibility to opportunistic infection is greatly increased when the CD4 count is below 200.  Listing 14.00.F.2.

and full grip strength bilaterally (5 out of 5).  (Tr. 272.)  She had full range of motion in her

elbows, forearms, hips, knees, ankles, and wrists bilaterally.  (Tr. 271.)  She had no muscle

atrophy in her extremities.  Her blood pressure was 140/100.  (Tr. 270.)  Dr. Fernando concluded

that Plaintiff had a moderate limitation for bending and possibly for lifting.  (Tr. 272.)

On November 16, 2006, reviewing examiner Dr. Galakos affirmed medical consultant N.

Natale's physical residual functional capacity assessment of Plaintiff, which stated that Plaintiff

could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk

six hours in an eight-hour workday, and push or pull within her lift and carry limitations.  (Tr.

289.)  The assessment also stated that Plaintiff should be limited to occasional climbing,

stooping, kneeling, crouching, and crawling.  (Tr. 290.)  The conclusions in the assessment were

based on Plaintiff's past medical history, including her HIV status, her back disorder and

hypertension, and the consultative examination performed by Dr. Fernando.  (Tr. 289-90.)

**B.    Procedural History**

Plaintiff filed applications for disability insurance benefits and supplemental security

income on September 20, 2004.  Her applications were denied initially on July 28, 2006, and

upon reconsideration on November 16, 2006.  (Tr. 14.)

Plaintiff then filed a timely written request for a hearing on November 28, 2006.

Represented by counsel, Plaintiff appeared and testified at a hearing held on March 26, 2008

before Administrative Law Judge ("ALJ") Donna A. Krappa.  A vocational expert also testified

at the hearing.  (Tr. 14.)  On August 4, 2008, upon consideration of the entire record, ALJ Krappa

found that Plaintiff was not disabled or eligible for supplemental security income.  (Tr. 22-23.)

The decision of ALJ Kappa become the final decision of the Commissioner on August 31, 2009,

when the Appeals Council affirmed her denial.  Plaintiff brought this action on October 30, 2009.

**C.      The Disability Standard And The Decision Of The ALJ**

       1.         <u>The Statutory Standard for a Finding of Disability</u>

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  An individual will be deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

*Step One: Substantial Gainful Activity.*  The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.[2]  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not

---

[2] "Substantial" work involves significant physical and mental activities.  "Gainful" work is performed for pay or profit.  20 C.F.R. § 416.972.

disabled without consideration of her medical condition.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful

activity, she must then demonstrate that she suffers from a severe impairment or combination of

impairments considered severe.  A "severe impairment" is one "which significantly limits [the

claimant's] physical or mental capacity to perform basic work activities."  If the claimant does

not demonstrate a severe impairment, she will be found not disabled.  20 C.F.R. § 416.920©.

Step Three: Listed Impairment.  If the claimant demonstrates a severe impairment, the

Commissioner will then determine whether the impairment meets or equals an impairment listed

in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the

"Listings").  If the claimant has such an impairment, she is found disabled.  If not, the

Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity.  At Step Four, the Commissioner determines

whether, despite her impairment, the claimant retains the residual functional capacity ("RFC")[3] to

perform her past relevant work.  If so, the claimant is found not disabled and the inquiry proceeds

no further.  If not, the Commissioner proceeds to the fifth step.  20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work.  If the claimant is unable to perform her past work, the

Commissioner considers the individual's RFC, age, education, and past work experience to

determine if she is able to make an adjustment to other work.  If she cannot do so, the claimant is

found disabled.  20 C.F.R. § 416.920(g).

---

[3] RFC designates the claimant's ability to work on a sustained basis despite her physical
or mental limitations.  The RFC determination is not a decision as to whether a claimant is
disabled, but is used as the basis for determining the particular types of work a claimant may be
able to perform despite her impairment(s).  See 20 C.F.R. § 416.945.

This five-step analysis involves shifting burdens of proof.  Wallace v. Sec'y of Health &

Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  The claimant bears the burden of persuasion

through the first four steps.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  If the analysis

reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant

is able to perform other work available in the national economy.  Id.

2.      The ALJ's Decision

Applying this five-step analysis, the ALJ found at Step One that Plaintiff had not been

engaged in any substantial gainful activity since May 20, 2003, the date of the alleged onset of

her disability.  (Tr. 17.)  At Step Two, the ALJ determined that Plaintiff suffers from three severe

impairments: HIV, hypertension, and a disorder of the back.[4]  (Tr. 17.)  At Step Three, however,

the ALJ found that Plaintiff's impairments, taken alone or in combination, do not meet or

medically equal one of the impairments listed in the Listings.  (Tr. 17.)

At Step Four, the ALJ determined that Plaintiff retains the RFC to perform "light work"

(Tr. 18) – that is, work that involves lifting no more than twenty pounds at a time, with frequent

lifting or carrying of objects weighing up to ten pounds, and that may involve a good deal of

walking or standing, or sitting most of the time with some pushing or pulling of arm or leg

controls.  20 C.F.R. § 404.1567(b).  The ALJ also determined that Plaintiff is limited to jobs that

permit at least three, fifteen-minute breaks during the day; require only occasional use of ladders,

ropes, scaffolds, ramps, or stairs; are simple and unskilled, involving one or two steps; are low

---

[4] Plaintiff argues that the ALJ does not adequately explain why she characterizes these
impairments as "severe."  (Pl. Br. 19.)  Although the ALJ does not expressly state her rationale, it
is evident from her opinion that she thoroughly considered the symptoms and effects of these
impairments in reaching her conclusion, as it is her duty to do so.  In any event, deeming the
impairments "severe" only helps Plaintiff in proving disability, so any error was harmless.

stress and require only occasional changes in the work setting and decisionmaking during the

work day; and require only occasional contact with supervisors, co-workers, or the general

public.  (Tr. 18.)  Since Plaintiff's prior work as a line packer and envelope stuffer was classified

as light and unskilled by the vocational expert, the ALJ concluded that Plaintiff is capable of

performing her past relevant work, and thus is not disabled within the meaning of the Social

Security Act.  (Tr. 21.)

Although she was not required under the regulations to do so, the ALJ nevertheless

proceeded to Step Five, at which she relied on the vocational expert's testimony to find that a

significant number of jobs exist in the national economy that Plaintiff can perform, including

garment sorter, scale operator, parts inspector, and labeler.  (Tr. 22.)  This finding provided

additional grounds for the ALJ's conclusion that Plaintiff is not disabled.

## II.  DISCUSSION

### A.      Standard Of Review

This Court reviews the decision of the Commissioner to determine whether there is

substantial evidence in the administrative record supporting his decision.  42 U.S.C.A. § 405(g);

Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a

mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate."

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S.

389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this

Court must uphold the decision even if it might have reasonably made a different finding based

on the record.  Simmonds v. Hecker, 807 F.2d 54, 58 (3d Cir. 1986).

**B.      Review Of The Commissioner's Decision**

Plaintiff challenges the decision of the Commissioner on grounds that the ALJ's denial of

benefits is not supported by substantial evidence.  Specifically, Plaintiff argues that the ALJ erred

by: (1) failing to compare Plaintiff's impairments, individually or in combination, to the Listings

(Pl. Br. 19); (2) lacking adequate evidentiary support for her RFC assessment (Pl. Br. 22); (3)

failing to properly evaluate Plaintiff's subjective complaints of pain (Pl. Br. 32-37); and (4)

selectively and improperly relying on the testimony of the vocational expert in concluding that

Plaintiff is not disabled.  (Pl. Br. 40-41.)  The Court will address each argument in turn.

1.      Comparing and Combining Impairments

Under 20 C.F.R. § 416.920(d), if the claimant has an impairment found in the Listings,

the Commissioner will consider her disabled regardless of her age, education, and work

experience.  To be disabling, an impairment must meet all of the criteria of a Listing.  Sullivan v.

Zeblev, 493 U.S. 521, 530 (1996).  If a claimant has multiple impairments, but none alone meets

or equals an impairment in the Listings, the Commissioner will consider whether findings related

to a combination of the claimant's impairments are at least of equal medical significance to those

of a listed impairment.  20 C.F.R. § 416.926(b)(3).  Here, Plaintiff's counsel argues that the

"entirety of [the ALJ's] decision is foundationless" because the ALJ did not compare each of

Plaintiff's individual impairments to specific Listings or assess whether the combination of her

impairments is medically equal to any listed impairments.  (Pl. Br. 19.)  However, it is clear from

the ALJ's thorough review of the evidence and express citations to specific Listings that she

conducted a proper comparison at Step Two.

For example, the ALJ compared Plaintiff's HIV symptoms to Listing 14.08 (HIV), noting

that the Listing requires a claimant to have at least one of several listed conditions, including: bacterial, fungal, or viral infections; malignant neoplasms; certain cognitive or motor dysfunction; HIV wasting syndrome; and repeated manifestations of infection resulting in the restriction of activities of daily living, difficulties in maintaining social functioning, or difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pain.  (Tr. 17.)  The ALJ comprehensively reviewed Plaintiff's medical records in order to compare her HIV to these criteria.

The ALJ noted that Plaintiff's HIV was well-controlled with medication and her CD4 counts – documented as 980, 558, 447, 643, and 718 – were consistently well above 200, the threshold below which one becomes more susceptible to opportunistic infection.  (Tr. 20.) Indeed, the ALJ noted a distinct absence of any evidence showing that Plaintiff had been treated, or is currently being treated, for any of the chronic or severe manifestations of HIV infection listed above.  (Tr. 20.)  The ALJ also noted that Plaintiff's condition was often described as HIV, not AIDS, and that Plaintiff was told she did not even require HIV medications until May 2007. (Tr. 20.)  In light of this evidence, the ALJ appropriately found that Plaintiff's HIV did not rise to Listing level.

The ALJ compared Plaintiff's hypertension to Listing 4.00 (Cardiovascular System) and found that her condition did not meet its criteria.  (Tr. 17-18.)  For hypertension to qualify as disabling under Listing 4.00, there must be evidence of a cardiovascular impairment that results in ventricular dysfunction or heart failure; discomfort or pain due to myocardial ischemia; syncope or near syncope due to inadequate cerebral perfusion; or central cyanosis due to left-to-right shunt, reduced oxygen concentration in the arterial blood, or pulmonary vascular disease.

Listing 4.00.A.  As the ALJ noted, the record was void of evidence demonstrating that Plaintiff

suffered from any of these conditions: there was no evidence that Plaintiff had experienced any

damage to her vital body organs, or that she had any functional limitations resulting from her

hypertension.  (Tr. 20.)  The ALJ also noted that while Plaintiff's blood pressure was elevated at

times, it was essentially controlled with prescribed medication.  (Tr. 20.)  Accordingly, the ALJ

properly compared Plaintiff's hypertension to Listing 4.00.

      The ALJ compared Plaintiff's back disorder to Listing "1.00 et seq" (Musculoskeletal

System) and noted that to meet any of the subsections of the Listing, the claimant must

demonstrate that she is unable to ambulate or perform fine and gross manipulations effectively

on a sustained basis.  Tr. 17; see also Listing 1.00.B.2.a.  The results of Dr. Fernando's

consultative examination, which were thoroughly analyzed by the ALJ, support the ALJ's

determination that Plaintiff does not meet these Listing 1.00 criteria: Plaintiff could walk on her

heels and toes without difficulty; used no assistive devices; had intact hand and finger dexterity

and full grip strength bilaterally; and had only a moderate limitation for bending and possibly for

lifting.  Further, X-rays of Plaintiff's back showed that her cervical spine was normal and her

lumbar spine had only posterior facet arthropathy.  (Tr. 270-72.)  These results suggest that

Plaintiff is quite mobile and able to perform manipulations effectively.  Given this analysis, the

Court finds that the ALJ adequately compared Plaintiff's back condition to Listing 1.00.

      Finally, after a thorough review of all of the evidence in the record, the ALJ explicitly

found that Plaintiff "does not have a . . . combination of impairments that meets or medically

equals one of the listed impairments in [the Listings]."  (Tr. 17.)  Although the ALJ does not

expressly state to which listings Plaintiff's combined impairments are not equivalent, it is

obvious from the record and the language she uses that the ALJ properly considered Plaintiff's

impairments in combination.  Furthermore, the claimant bears the burden of persuasion through

the first four steps of the disability analysis.  Bowen, 482 U.S. at 146 n.5.  Plaintiff, for her part,

is silent as to which listings the ALJ should have used for her comparison, affording this Court

no basis to test Plaintiff's contentions of error.

> 2.      RFC Assessment

At Step Four, the ALJ found that Plaintiff has the RFC to perform "light work," with

certain additional limitations.  (Tr. 18.)  Based on this determination, the ALJ found that Plaintiff

could perform her prior work as a line packer and envelope stuffer,[5] which was classified as

"light work" by the vocational expert and within Plaintiff's additional limitations.  (Tr. 21.)

Plaintiff's counsel challenges this finding, arguing that the ALJ "announces [an RFC] assessment

bereft of any evidence, analysis or any attempt at persuasion."  (Pl. Br. 22.)  Counsel boldly

asserts that in making this finding, the ALJ "merely produced the word 'light' out of thin air,"

and suggests that if the Court were to white out the word "light" and replace it with "heavy,"

there would be no discernable difference in the ALJ's analysis.  (Pl. Br. 27.)

_____

[5] Plaintiff harps on an obvious typographical error in one of the headings in the ALJ's opinion, which states that Plaintiff is "unable" to perform past relevant work.  (Pl. Br. 40.) However, it is clear from other statements in the opinion, and the opinion as a whole, that the ALJ found Plaintiff to be capable of performing past relevant work.  See, e.g., Tr. 14 ("I . . . find that the claimant is able to perform past relevant work."); Tr. 21 ("[The Vocational Expert] testified that given the above determined RFC, the claimant could return to both of her prior jobs. Accordingly, the claimant is able to perform past relevant work."); see also Beeks v. Commissioner of Social Security, 363 Fed. App'x. 895, 897 n.4 (3d Cir. 2010) (agreeing that the word "not" in a heading of the ALJ's opinion was a typographical error in light of the ALJ's other analysis); Calkins v. Secretary of Health & Human Servs., No. 85-5685, 1986 WL 17083, at *1 (5th Cir. May 7, 1986) (concluding that the ALJ's omission of the word "not" was a typographical error, given the ALJ's other analysis and the grammatical issues presented by the omitted word).

Counsel's bombastic attacks on the ALJ's opinion are wholly unfounded.  Rather than producing an RFC determination "out of thin air," the ALJ based her finding on the opinions of physicians and other medical evidence in the record.   For example, Dr. Fernando, who performed a consultative examination of Plaintiff, found that she could perform transfers and walk on her heels and toes without difficulty; had full range of motion in her elbows, forearms, hips, knees, ankles, and wrists bilaterally; had full strength in her upper and lower extremities, intact hand and finger dexterity, and full grip strength bilaterally; and had only a moderate limitation for bending and possibly for lifting.  (Tr. 270-72.)   The results of Dr. Fernando's examination, which indicate normal agility and strength and only moderate limitations for bending, support an RFC of light work.

The ALJ also relied upon the opinion of Dr. Galakos, who found, based on a review of Plaintiff's medical records, that Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk six hours in an eight-hour workday; push or pull within her lift and carry limitations; and occasionally climb, stoop, kneel, crouch, and crawl.  (Tr. 290.)   Again, this assessment supports the ALJ's RFC determination, as it nearly mirrors the statutory definition of "light work" and accounts for the additional limitations added by the ALJ.[6]

Similarly, the carefully-considered opinions of nurse practitioners Eva Stettner and Cynthia Salisbury support an RFC of light work: Stettner, in her medical report for the Division

---

[6] Plaintiff claims that the ALJ does not adequately explain the additional limitations she adds to Plaintiff's RFC assessment (i.e., simple, unskilled work involving one or two steps, and work that involves limited contact with supervisors and the general public).  (Pl. Br. 29-30.) While the ALJ might not fully explain the basis for all of these additional limitations, they only help Plaintiff in this case by further reducing her occupational base.  Therefore, any error is again harmless.

of Family Development, determined that Plaintiff was able to participate in a work training

program (Tr. 397-98); and Salisbury, in her medical report for the Division of Disability

Determination Services, found that Plaintiff had no limitations in her ability to stand, walk, lift,

carry, push, pull, or sit, and no condition that limited her ability to perform work-related

activities.  (Tr. 393.)  Given this record, the Court finds that the ALJ's determination that

Plaintiff is capable of light work is supported by substantial evidence.

     3.      Assessment of Plaintiff's Complaints of Pain

     Plaintiff claims that the ALJ did not adequately evaluate her subjective complaints of

pain.  (Pl. Br. 32-37).  While a claimant's assertions of pain must be given "serious

consideration" by the ALJ, Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), such assertions

will not alone establish that the claimant is disabled; rather, "there must be medical signs and

laboratory findings which show . . . a medical impairment(s) which could reasonably be expected

to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529(a).  The claimant bears

the burden of demonstrating that her complaints are substantiated by medical evidence.

Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996).

Furthermore, the ALJ has the discretion to "evaluate the credibility of a claimant and to arrive at

an independent judgment in light of the medical findings and other evidence regarding the true

extent of the pain alleged by the claimant."  Id.  In performing this evaluation, the ALJ must

consider the claimant's daily activities; the location, duration, frequency, and intensity of the

alleged pain or other symptoms; precipitating and aggravating factors; the claimant's

medications; and treatment and any other measures used to relieve the claimant's pain or

symptoms.  20 C.F.R. § 404.1529(c)(3).

Here, the ALJ properly considered all of these factors and formed her opinion as to

Plaintiff's credibility only after she thoroughly analyzed all of Plaintiff's symptoms and the

extent to which they could reasonably be accepted as consistent with the objective medical

evidence and other evidence presented.  For example, as the ALJ highlights, while Plaintiff

complained of back pain and severe muscle pain throughout her body, Dr. Fernando noted that

she appeared to be "in no acute distress." (Tr. 19.)  Furthermore, Plaintiff's medical records

from Jersey City Family Health Center demonstrate that she often characterized her pain as a "0"

out of "10," and denied any complaints on multiple occasions.  (Tr. 20.)  Plaintiff also claimed

that she suffered from bouts of fatigue and tired too quickly to be an effective worker.  However,

the ALJ found her symptoms to be inconsistent with Dr. Galakos's determination that Plaintiff

could work six hours in an eight hour day.  (Tr. 289.)

Plaintiff also complained of opportunistic infections.  However, the ALJ found no

evidence to substantiate these claims, and even Dr. Fernando noted the obscure nature of

Plaintiff's complaints: explaining that "despite the claimant's assertions that she has had

opportunistic infections, the rationale behind withholding treatment is unclear." (Tr. 272.)

Given this disparity between Plaintiff's subjective complaints and the medical evidence (or lack

thereof), it was within the discretion of the ALJ to afford Plaintiff's complaints lesser weight.

The ALJ also took into account Plaintiff's medications, noting that Plaintiff did not

require medication for her HIV until May 2007, and that her hypertension and HIV seemed to be

adequately controlled by medications.  (Tr. 20.)  The ALJ further accounted for Plaintiff's history

of medical treatment, specifically referencing treatment for a sore throat, fractured ankle, eye and

mouth infection, abdominal pain, gynecological issues, hip and shoulder pain, and a ruptured

appendix.  (Tr. 19.)  These conditions were not simply overlooked by the ALJ, as Plaintiff

suggests; rather, the ALJ properly exercised her discretion and found them to be less debilitating

than Plaintiff asserted.  Given this thorough analysis, the Court finds that the ALJ properly

evaluated Plaintiff's credibility.

> 4.     Testimony of the Vocational Expert

Although the Court finds that the ALJ properly adjudicated this case at Step Four, it will

nevertheless address Plaintiff's arguments in relation to Step Five.  Plaintiff contends that the

ALJ erred at Step Five by asking the vocational expert a hypothetical question that was based on

an "unsupported" RFC, and then by relying on his response.[7]  (Pl. Br. 40-41.)  This argument is

without merit.  As discussed above, the ALJ's determination of an RFC for light work is

supported by substantial evidence, and thus the ALJ's question to the vocational expert and her

reliance on his response were proper.  See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir.

2005) (noting that the ALJ may rely on the vocational expert's answers to hypothetical questions

that accurately convey the claimant's credibly established limitations).

Plaintiff also asserts that the ALJ erred by asking the vocational expert two additional

hypothetical questions, but then not giving his answers to these questions sufficient

consideration.  (Pl. Br. 41.)  Specifically, the ALJ asked the vocational expert whether a person

who could concentrate only two and a half hours per day could work, and whether a person who

---

[7] The ALJ asked the vocational expert whether jobs exist in the national economy that Plaintiff can perform, taking into account her age, education, work experience, and RFC for light work.  The vocational expert responded that given her limitations, Plaintiff could perform the jobs of garment sorter, scale operator, parts inspector, and labeler, and that approximately 1,500 of these jobs exist locally and 45,000 exist in the national economy.  (Tr. 2.)  The ALJ found these figures to represent a significant number of jobs, and thus found Plaintiff to be not disabled per 20 C.F.R. § 416.920(g).  (Tr. 22.)

suffered from depressive symptoms once a week could work.  The vocational expert responded

to both questions in the negative.  (Pl. Br. 40-41.)  However, as these hypotheticals involve

conditions that were not reflected in the ALJ's RFC assessment, the ALJ was entitled to

disregard the vocational expert's responses.  See Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir.

2004) (noting that the ALJ has the authority to disregard responses to hypothetical questions that

are inconsistent with the medical record).

Finally, Plaintiff argues that the ALJ erred by not mentioning the fact that Plaintiff's

counsel asked the vocational expert whether the jobs he stated Plaintiff could perform would

require Plaintiff to move her hands and arms frequently.  (Pl. Br. 42.)  In response to this

question, the vocational expert stated that Plaintiff would have to perform hand and arm

movements in excess of seventy-five percent of the day.  Plaintiff claims that given her

impairments, it is doubtful and "entirely speculative" that she could perform such jobs.  (Pl. Br.

42.)  In essence, Plaintiff is once again challenging the ALJ's RFC determination by arguing that

the RFC should have incorporated limitations to hand and arm movements.  However, Plaintiff

has offered no evidence that she cannot use her hands and arms, and evidence in the record

supports no such finding.  Therefore, the ALJ was entitled to disregard counsel's question and

the vocational expert's response.  See Jones, 364 F.3d at 506.

### III.  CONCLUSION & ORDER

For the reasons set forth above, and after careful review of the record in its entirety, the

Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial

evidence.  Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff

Social Security benefits.

Therefore, **IT IS** on this 2nd day of August, 2010, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.
